**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 23 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JAMES DENNIS BOYSEL,

    Defendant-Appellant.

No. 99-5121

(D.C. No. 98-CR-167-BU)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **HENRY**, and **LUCERO**, Circuit Judges.[**]

In January 1999, Defendant James Boysel pled guilty to possession of a firearm

and ammunition after former conviction of a felony in violation of 18 U.S.C. § 922(g).

Following a contested sentencing hearing, the district court sentenced Defendant to 98

months imprisonment and three years supervised release. Defendant appeals the district

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(A)(2). The case is therefore ordered submitted without oral argument.

court's application of a three-point sentencing enhancement pursuant to U.S.S.G. § 3A1.2(b) for assault on a police officer. We exercise jurisdiction pursuant to 18 U.S.C. § 3742 and affirm.

I.

In July 1998, Tulsa Police Department Officer Terry Maurer stopped a vehicle driven by Defendant because it displayed an unreadable dealer's tag. Officer Maurer approached the driver's side window, requested Defendant's identification and proof of insurance, and advised Defendant of the reason for the traffic stop. When Defendant informed Officer Maurer that he had no identification or proof of insurance, Officer Maurer asked Defendant to step out of the vehicle. Defendant exited the car "kind of aggressively," stepping "within probably six or eight inches of [Officer Maurer] and invad[ing] [his] personal space." With his right hand, Officer Maurer pushed Defendant back to a comfortable distance. To determine if Defendant had a wallet containing any identification in his back pocket, Officer Maurer asked Defendant to raise his shirt and turn around. Defendant reached down as if he were going to pull up his shirt and "then all of a sudden his right hand, very quickly reached behind the small of his back, with his palm facing out, not to pull up a T-shirt, but as to go for a weapon." Officer Maurer then pushed Defendant back on the shoulder and drew his service weapon. Officer Maurer saw Defendant drop something that looked like a gun. Defendant fled the scene, running across a parking lot and through an open field. Following a pursuit by foot, Officer

2

Maurer arrested Defendant. Officer Maurer discovered a butterfly knife in Defendant's pocket and subsequently recovered a loaded firearm from the ground near Defendant's vehicle.

At the sentencing hearing, Officer Maurer testified he felt Defendant placed his personal safety in danger. The district court asked Officer Maurer, "In your assessment of the situation, do you feel that he was trying to pull that gun on you?" Officer Maurer responded, "Yes, sir, I feel he wanted to get away regardless of what it took. I don't know whether he was going to use it to bluff me out or to shoot me." Defendant testified that he removed the gun and threw it to the ground so he could run from Officer Maurer.

## II.

Following a sentencing hearing at which both Defendant and Officer Maurer testified, the district court applied a three-level sentence enhancement pursuant to U.S.S.G. § 3A1.2(b). Finding Officer Maurer to be more credible, the district court believed Officer Maurer's version of the events and his testimony that he "fear[ed] for his safety and thought that he could incur serious bodily injury, if he hadn't taken the action that he did take." We review the district court's legal interpretation of the sentencing guidelines de novo and the district court's factual determinations for clear error. United States v. Guidry, 199 F.3d 1150, 1158 (10th Cir. 1999). We give due deference to the district court's application of the guidelines to the facts. United States v. Segien, 114 F.3d 1014, 1020 (10th Cir. 1997).

U.S.S.G. § 3A1.2(b) provides for a three-level enhancement if the court finds: (1) during the course of the offense or immediate flight therefrom, (2) the defendant assaulted a person, (3) who he knew or had reasonable cause to know was a law enforcement officer, (4) in a manner which created a substantial risk of serious bodily injury.[1]  See also United States v. Johnson, 977 F.2d 1360, 1382 (10th Cir. 1992).  The commentary provides that § 3A1.2(b) "applies in circumstances tantamount to aggravated assault" and limits its applicability to "assaultive conduct against law enforcement or correction officers that is sufficiently serious to create at least a 'substantial risk of serious bodily injury.'"  U.S.S.G. § 3A1.2, comment. (n.5).  Defendant challenges the district court's conclusion that Defendant assaulted the officer and the assault created a substantial risk of serious bodily injury.

A.

Defendant first argues the district court improperly used a subjective standard in determining whether an assault occurred, rather than an objective reasonable person

---

[1]  U.S.S.G. § 3A1.2 states,

If –

(b)    during the course of the offense or immediate flight therefrom, the defendant . . . knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury,

increase by 3 levels.

4

standard. We need not decide whether a subjective or objective standard governs the application of U.S.S.G. § 3A1.2 because even under the objective standard advanced by Defendant, Officer Maurer's subjective apprehension was objectively reasonable. Based on the events described by Officer Maurer, which the district court found credible, a similarly situated reasonable person would have experienced apprehension. Defendant behaved in an aggressive manner when he exited the vehicle, requiring Officer Maurer to push him back. In response to Officer Maurer's request to pull up his shirt, Defendant reached down as if to lift his shirt, then suddenly reached around his back with his palm facing out. When Officer Maurer pushed Defendant, Defendant dropped an object Officer Maurer believed to be, and in fact was, a gun. Under these facts, Officer Maurer's fear for his personal safety was objectively reasonable. See United States v. Lee, 199 F.3d 16, 18 (1st Cir. 1999) (police officer reasonably experienced fear as a result of defendant's efforts to reach for gun).

B.

Defendant further argues the facts do not support the imposition of a three-level enhancement under U.S.S.G. § 3A1.2(b) because Defendant was reaching for the gun in an effort to throw it away. Specifically, Defendant argues the record contains no facts to support a deliberate or intentional threat by Defendant and no facts to support a present ability by Defendant to carry out any such threat.

The same facts that support the reasonableness of Officer Maurer's apprehension

5

also support the imposition of § 3A1.2(b).  The district court did not clearly err in finding that Defendant assaulted Officer Maurer.  The district court found Officer Maurer's testimony credible and the record supports its finding that Defendant's conduct created "at least a 'substantial risk of serious bodily injury.'"  U.S.S.G. § 3A1.2, comment. (n.5).  See Lee, 199 F.3d at 20 (application of § 3A1.2(b) warranted where defendant's act of reaching for gun while attempting to flee from officers created apprehension and substantial risk of injury even if defendant did not intend to shoot officers or cause fear, but had knowledge that fear would be a consequence of his actions); United States v. Weaver, 8 F.3d 1240 (7th Cir. 1993) (upholding the application of § 3A1.2(b) where defendant, during a violent struggle with police officers,  repeatedly reached toward his jacket where he had a revolver); United States v. Powell, 6 F.3d 611 (9th Cir. 1993) (application of § 3A1.2(b) appropriate where officers saw defendant holding a gun when grabbing jacket).  Here, the district court accepted Officer Maurer's rendition of the events and concluded Defendant reached for his loaded gun.  The district court noted the fact that Defendant did not actually point the weapon at the officer did not mean Defendant was not going to use it because Officer Maurer pushed Defendant off balance when he saw Defendant reach behind his back.  Defendant's apparent efforts to reach his

gun created a substantial risk of bodily injury.  Accordingly, the district court properly

applied the § 3A1.2(b) enhancement.

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge